[Civ. No. 22056. First Dist., Div. Three. May 12, 1965.]

In re EARLE STANLEY CAVANAUGH, a Person coming under the Juvenile Court Law. THE PEOPLE, Plaintiff and Respondent, v. EARLE STANLEY CAVANAUGH, Defendant and Appellant.

Winfield W. Foster, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal from a judgment entered pursuant to sections 1800 through 1803 of the Welfare and Institutions Code,[1] extending the control of the Youth Authority over appellant for a period of two years beyond his 21st birthday.[2]

Appellant was committed to the Youth Authority in 1957 when he was 14 years of age. He was given a psychiatric examination upon his admission. The examining physician concluded that he was then a dangerous person and "able to kill someone." Later examinations by various psychiatrists confirmed this evaluation. From the time of his reception by the Youth Authority until December 1963 when the order herein appealed from was made, appellant was transferred from the Reception Center at Perkins to the Fred C. Nelles School for Boys, to the Preston School of Industry, and finally to the Deuel Vocational Institute at Tracy. During his detention he was paroled three times, and each time his parole was revoked because of failure to adjust in society.

Control of the Youth Authority over appellant would ordinarily have ceased upon appellant's 21st birthday, but as that date approached it appeared that appellant was not prepared to make any successful adjustment outside of some cor-

---

[1] All section references are to the Welfare and Institutions Code, unless otherwise noted.

[2] In summary these sections authorize the committing court, on application of the Youth Authority, to order continued detention of one previously committed, upon a showing that discharge of such person would be "physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality. . ." Notice to the subject, or to his parent or guardian if he is a minor, is required. At the hearing upon the application the person whose liberty is involved is entitled to be represented by counsel, and to appeal from the court's order.

rectional facility. The Youth Authority Board therefore resolved to seek continued detention of appellant under authority of the cited statutes.

At the hearing on respondent's petition there was evidence, including testimony from a psychiatrist, to the general effect that appellant was then mentally unstable, and that his release would be physically dangerous to the public. Other witnesses testified, and documentary evidence was received. At the conclusion of the hearing the court made its order extending the control of the Youth Authority over appellant for two years beyond his 21st birthday.

Appellant first contends that the court had no jurisdiction to issue its order for his continued detention because respondent did not comply with procedural requirements concerning the filing of the petition.　　Section 1800 requires that the petition be filed at least 90 days before the subject's date of discharge. Here the petition was filed less than 60 days before appellant's scheduled date of release. Appellant argues that this failure to comply with the 90-day requirement of section 1800 divested the court of jurisdiction. He urges that the 90-day period established by the statute operates in the same fashion as a statute of limitations in criminal cases, where the running of the statute against a charged offense operates to deprive the court of jurisdiction. (See Witkin, Cal. Criminal Procedure (1963) § 204, pp. 191-192, and cases cited.) This is not correct. Appellant was originally committed to the Youth Authority by the juvenile court.　　All proceedings leading up to the order here challenged took place in that court. Such proceedings are civil in nature, designed to ''serve the spiritual, emotional, mental and physical welfare of the minor and the best interests of the State; . . .'' (§ 502; see *In re Johnson*, 227 Cal.App.2d 37, 39 [38 Cal.Rptr. 405].)　　Section 1800 vests jurisdiction in the committing court to hear and determine petitions filed thereunder.　　Although the petition was not timely filed, this error did not deprive the court of jurisdiction. The statute does not purport to restrict the court's power to act where the petition is not filed within the stated period of 90 days, nor is any penalty attached for noncompliance. Thus the court had jurisdiction and authority to issue its order, despite respondent's failure to file the petition within the stated time.

In *Redlands etc. School Dist. v. Superior Court*, 20 Cal.2d 348 [125 P.2d 490], our Supreme Court reviewed a judgment claimed to have been rendered in excess of the trial court's

jurisdiction because of plaintiff's failure to comply with a statutory requirement respecting the filing of a verified claim. The court said at page 360: "But not every violation of a statute constitutes excess of jurisdiction on the part of a court. . . . Where, as here, the statute does not restrict the power of the court but merely sets up a condition precedent . . . , we think the violation of the statutory provision constitutes an error of law rather than excess of jurisdiction." (See also *Garrison* v. *Rourke*, 32 Cal.2d 430, 435-436 [196 P.2d 884]; 1 Witkin, Cal. Procedure (1954) Jurisdiction, §§ 49-52, pp. 320-324.)

Appellant also claims that, even if the court did have jurisdiction to entertain the petition, nevertheless respondent's failure to file the petition at least 90 days before his date for discharge caused the court to conduct the hearing in ". . . haste which otherwise would not have been necessary," to appellant's prejudice. There is no merit to this contention. Respondent's petition was filed November 12, 1963. The court appointed counsel for appellant, and he was properly represented throughout the proceedings. Adequate time was allowed for the preparation of opposition to the petition. The actual hearing did not take place until December 18, 1963. The transcript of the proceedings reveals that the hearing was full, complete and fair in all respects. We find nothing in the record to support appellant's claim of prejudice because the petition was not timely filed.

Appellant next contends there was a failure to give notice to his parents, as required by section 1801. The evidence was to the effect that the respondent mailed notice to appellant's mother. The letter was not returned. Respondent also attempted personal service upon appellant's father. The sheriff's return indicates that the father could not be found within the county and that he had moved from the address given for purposes of service.

Service of notice of hearing was properly made upon appellant's mother. The proof of service by mail is established by the declaration of a deputy clerk of the juvenile court, made in full compliance with Code of Civil Procedure sections 1012, 1013, and 1013a. (Cf. Welf. & Inst. Code, §§ 658-660.) The notice, served by mail, in the manner described in Code of Civil Procedure section 1013, is presumed to have been received. (Code Civ. Proc., § 1963, subd. 24.) There was no evidence to overcome this presumption. In the absence of any evidence sufficient to overcome the presumption, the certificate of service by mail is sufficient to establish the fact of service. (See

*Forslund* v. *Forslund,* 225 Cal.App.2d 476, 486 [37 Cal.Rptr. 489].)

■ It is admitted that notice of the hearing on respondent's petition was not given to appellant's father. We do not think this invalidates the court's order. Appellant was represented by counsel at the hearing. No objection on this ground was raised by appellant or by his counsel. On the contrary, the matter proceeded to a full and complete hearing. The witnesses produced by respondent were cross-examined by appellant. Appellant produced at least one witness in his own behalf. His counsel argued the issues at length. Under the circumstances here present we think appellant waived any right he may have had to object that his father had not been served with notice of the hearing. (See 40 Cal.Jur.2d, Process, Notices and Papers, § 81, p. 107.) Moreover, our own review of the record discloses no prejudice suffered by appellant because of the failure of respondent to notify his father of the proceedings.

■ Appellant asserts bias on the part of the trial judge. The record does not support this charge. The trial judge did ask questions of one witness, as he had a right to do. The questions asked were proper in all respects. They related principally to the adequacy of the Youth Authority facilities for the care and treatment of the youth offender. No objection was made by appellant to any of the questions asked, nor was any claim of bias or prejudice made at the hearing. ■ Generally, where bias and prejudice against a trial judge is claimed, the issue must be raised when the facts first become known, and in any event, before the matter is submitted for decision. This is so for the reasons stated by the court in *Rohr* v. *Johnson,* 65 Cal.App.2d 208, 212 [150 P.2d 5]: ''A party should not be allowed to gamble on a favorable decision and then raise such an objection in the event he is disappointed in the result.''

Appellant attacks the constitutionality of sections 1800 through 1803 on two grounds. First, he says these provisions of law deny him the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and article IV, section 25 of the California Constitution. Appellant argues that the Legislature, in enacting these sections, has determined that the only group of physically dangerous persons from which society needs protection is that composed of persons subject to the control of the Youth Authority and that the discrimination thus made between such

persons and all other persons in society is unreasonable and arbitrary. Appellant points to the fact that control by the Youth Authority is acquired by reason of a person's age, and that age bears no essential relationship to the possession of mental or physical characteristics which may make his release physically dangerous to the public.

Of course it is true that a propensity for antisocial conduct is not limited to young persons. ▮▮▮ Nevertheless, the Legislature may recognize " '. . . degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' " (*West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379, 400 [57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330].) Moreover, it has been recognized that classification based on age is reasonable, even though such classification may determine the punishment to be inflicted. (*People* v. *Turville,* 51 Cal.2d 620, 638 [335 P.2d 678]; *People* v. *Scherbing,* 93 Cal.App.2d 736, 741 [209 P.2d 796].)

▮▮▮ When it is asserted, as it is here, that a statute denies equal protection of the laws, we must remember that the power of the Legislature to classify is broad, and that its exercise involves a wide discretion. In *In re Herrera,* 23 Cal.2d 206, 212 [143 P.2d 345], the court considered a classification claimed to violate the Fourteenth Amendment to the United States Constitution, and said: " 'The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason.' " ▮▮▮ Here the Legislature has determined that society needs protection from those young persons committed to the Youth Authority where at the time of their release such persons are physically dangerous to the public because of "mental or physical deficiency, disorder or abnormality." We think such classification is neither arbitrary nor unreasonable. On the contrary, appellant's continued detention is supported by reason as well as a humanitarian consideration for his own welfare. Although detained, appellant still has available to him all the diagnostic and treatment facilities of the Youth Authority. The object of his detention remains the same, namely that he ultimately be returned to and assume his place in society without danger to himself or to others.

Appellant also contends that the cited code sections are so vague as to violate the due process clause of the Fourteenth Amendment to the United States Constitution. He bases his argument on the proposition that the phrases ''physically dangerous'' and ''mental or physical deficiency, disorder or abnormality'' as used in section 1800 are equivalent to the phrase ''inimical to the public interest,'' held unconstitutionally vague in *People* v. *Saad,* 105 Cal.App.2d Supp. 851 [234 P.2d 785]. But the phrase ''inimical to the public interest'' is difficult to define with any degree of certainty and even more difficult to apply. ▮▮▮ On the other hand, the meaning of such phrases as ''physically dangerous'' and ''mental or physical deficiency'' is subject to reasonable definition, and may readily be applied in specific factual situations. The facts of this case offer an apt illustration. Here the unfortunate events of appellant's childhood are revealed in the various reports of psychiatrists who have examined him. There is a history of violent events recorded, ranging from fighting with fellow inmates, to a homicidal attack upon his foster parents. The facts demonstrate that appellant is indeed a ''dangerous person'' and one from whom society is entitled to protection, and in turn one to whom society owes a duty to aid and help. We cannot uphold appellant's attack upon the language of the statute on the ground that it is unconstitutionally vague. (See *People* v. *Levy,* 151 Cal.App.2d 460, 465 [311 P.2d 897] ; *Minnesota* ex rel. *Pearson* v. *Probate Court,* 309 U.S. 270, 273 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530].)

Our review of the constitutionality of sections 1800 through 1803 is limited to a consideration of the objections raised by appellant, namely that these provisions of law deny him the equal protection of the laws, and are so vague and indefinite as to violate the due process clause of the Fourteenth Amendment to the United States Constitution. No other constitutional objections have been raised or considered.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied June 8, 1965, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1965.