[Crim. No. 24037. First Dist., Div. One. Dec. 31, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD JAY ECHOLS, Defendant and Appellant.

**COUNSEL**

Mark S. Rudy, under appointment by the Court of Appeal, David H. Fielding and Bushnell, Caplan, Fielding & Rudy for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—On his not guilty pleas, defendant Echols was found guilty of two counts of involuntary manslaughter charged as having been committed on March 14, 1974. But on his subsequent trial upon his pleas of not guilty by reason of insanity, he was found not guilty, according to Penal Code section 1026. He was thereupon committed, as provided by section 1026, to a "state hospital for the care and treatment of the mentally disordered."

Thereafter, *December 2, 1981,* based upon an allegation that Echols, "by reason of a mental disease, defect, or disorder, represents a substantial danger

of physical harm to others," a petition was filed for his "extended commitment (P.C. section 1026.5(b))" in the state hospital. By its order the superior court thereafter extended such commitment, and recommitted Echols "to the Department of Mental Health, Napa State Hospital for a period of one (1) year from the date of termination of his previous commitment, to wit: *February 9, 1983,* pursuant to Penal Code section 1026.5(b)." (Our italics.)

Echols' appeal is from the superior court's order, which he describes as a "denial of his motion to dismiss filed in this cause."

On his appeal Echols contends that, for three stated reasons, his "recommitment to Napa State Hospital was invalid."

He first argues that: "The appellant's recommitment violated California Penal Code section 1026.5(b)(2)," because of a *lack of jurisdiction* to entertain the here questioned proceedings.

Penal Code section 1026.5 discloses a legislative purpose that one situated as was Echols, who is committed to a state hospital under section 1026 as not guilty by reason of insanity, may not be kept in state hospital custody longer than the maximum "term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted." But the section *also* provides that if the person "has been found guilty of a felony involving death [and] by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others," his term of commitment to the state hospital may be *extended.* A petition for such extension "shall" be filed with the superior court, *"no later than 90 days* before expiration of the original commitment." (Our italics.)

Echols' original commitment to the state hospital, as noted, would have terminated *February 9, 1982.*

*Sixty-two* days before expiration of Echols' original state hospital commitment, the above-noted section 1026.5 petition was filed, seeking his commitment's extension. It was supported, at an ensuing hearing, by the following sworn declaration of two state hospital staff psychiatrists.

"Ronald Echols was admitted to Napa State Hospital as a transfer from Atascadero on June 26, 1979, under a Penal Code commitment. The original crime was that he shot and killed two victims in 1974. He was released from Napa State Hospital to outpatient status, December 23, 1980, and returned to Napa State Hospital under a TANGI commitment, March 7, 1981. He was returned to outpatient status, March 12, 1981 and came back once more under a TANGI commitment, November 20, 1981. This time, he became involved in a

quarrel with another person and this other person was shot by the patient. Patient states that he did the shooting in self-defense, 'He had a gun on me and said that he was finishing me off.'

"This patient had a psychotic break while he was on active duty in the military service between 1972 and 1973 and has a service-connected disability because of this illness. He has a history of substance abuse including alcohol, marijuana, LSD, cocaine and methedrine. He has a history of suicide attempt in 1972 by jumping in front of moving vehicles. He has a past history of paranoid schizophrenia psychosis characterized by symptoms of auditory hallucinations and delusions of persecution. These symptoms are aggravated by the use of alcohol and drugs. At present, he is in apparent remission from the acute symptoms of his psychosis.

"Although this man . . . is in apparent remission from his acute psychotic symptoms, he does have the condition of schizophrenia, paranoid, chronic, and this condition is aggravated by substance abuse including drugs and alcohol. Mental illness in this patient is still a problem. The symptoms are, at present, controlled by antipsychotic medication and he does not have alcohol and drugs available to use.

"In view of the past history of manslaughter with two dead victims and the most recent event of a quarrel ending by shooting another victim, I come to the conclusion that the patient probably constitutes a substantial danger to others, at least potentially.

"With such tenuous control and with the serious incident involving a victim occurring as recently as November 18, 1981, I would think that an extension of the Penal Code 1026 status would be indicated for the protection of others."

On the first of his instant arguments, Echols insists that the petition's untimely filing deprived the superior court of *"jurisdiction"* to consider and act upon it, and that his motion to dismiss the petition should therefore have been granted.

The argument is seemingly answered by the very statute at issue. Penal Code section 1026.5 states (subd. (a)(2)): *"The time limits of this section are not jurisdictional."* (Our italics.)

But Echols relies upon *People* v. *Pacini* (1981) 120 Cal.App.3d 877 [174 Cal.Rptr. 820]. In its opinion, the court had there found itself (120 Cal.App.3d at p. 892, official advance sheets) "compelled by statute to hold that the trial court lacked jurisdiction to accept the belated petition and to extend Pacini's commitment under Penal Code section 1026.5," thus lending aid to Echols' in-

stant argument. However, upon the People's petition for rehearing, the court (122 Cal.App.3d at p. 369a, official advance sheets) modified its opinion declaring that since, for other reasons "this case must be decided in favor of Pacini, we need not resolve whether or under what conditions a violation of the 'time limits' of (b)(2) is jurisdictional." We construe the foregoing as setting aside the court's holding of "lack of jurisdiction" and the rationale upon which it was based.

On the other hand, this court (Div. Three) in *Johns* v. *Superior Court* (1981) 119 Cal.App.3d 577, 580, 581 [175 Cal.Rptr. 443], was confronted with a similar problem, which it described as, "whether violations of the 90-day and 30-day time requirements of subdivision (b) of Penal Code section 1026.5 make the commitment order a nullity irrespective of prejudice to the defendant or excuse for the violations." It was held "that they *do not.*" (Our italics.) Continuing, the appellate court said:

"Although the time requirements of section 1026.5 are not jurisdictional, considerations of due process require an inquiry into whether the defendant was harmed by violation of the statutory requirements. Petitioner argues that the inquiry should focus upon whether the prosecution has shown a proper justification for the delay, such as the factual impossibility of filing within the time limits. We conclude, however, that the inquiry should be the same as made when testing under due process standards the delay in criminal proceedings.

"The due process test utilized under both federal and state speedy trial decisions involves a balancing of any prejudicial effect of the delay against the justification for delay. (Cf. *Barker* v. *Wingo* (1972) 407 U.S. 514, 532 [33 L.Ed.2d 101, 117-118, 92 S.Ct. 2182], with *People* v. *Hannon* (1977) 19 Cal.3d 588, 610, fn. 2 [138 Cal.Rptr. 885, 564 P.2d 1203].) Except where there has been an extended delay, as there was in *Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 812 [51 Cal.Rptr. 921, 415 P.2d 809], prejudice will not be presumed from delay. Where prejudice is not presumed, it is incumbent upon the defendant to show circumstances of actual prejudice. (See *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 440-441 [121 Cal.Rptr. 457, 535 P.2d 321].)"

We find ourselves in agreement with the holding of *Johns* v. *Superior Court, supra,* 119 Cal.App.3d 577.

It will be remembered that Echols was returned to the state hospital, *November 20, 1981,* as the result of another quarrel and shooting, occurring November 18, 1981. His original maximum period of commitment expired *February 9, 1982.* It was thus impossible to file the instant petition, based primarily if not entirely upon the *November 18, 1981,* incident, "not later than 90 days before expiration of the original commitment."

The trial court, we opine, thus reasonably found "justification for the delay." And since Echols made no showing of "prejudice" attending the delay, the court's order, under *Johns* v. *Superior Court, supra,* 119 Cal.App.3d 577, was within its jurisdiction and, at least to that extent, without error.

■ The next of the arguments offered in support of the claimed invalidity of the extended commitment is stated as follows: "The appellant's recommitment was arbitrarily based on an isolated incident, unrelated to his original commitment, and therefore in violation of the legislative purpose of section 1026.5."

We discern no legislative purpose in Penal Code section 1026.5 or elsewhere, that a recent act of violence, unrelated to earlier such acts of violence which had resulted in commitment to a state hospital for the criminally insane, may not, for the protection of the public, form the basis of an extended commitment. Such a purpose, we think, would be unreasonable, and such as may not be attributed to the Legislature. (See *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].)

The third and final argument in support of Echols' contention is that: "The untimely petition for recommitment violated appellant's right to present an adequate defense at a fair hearing guaranteed by both the United States and state Constitutions."

We observe no suggestion, at the superior court hearing attended by Echols personally and by counsel, that he was in any way deprived of a fair hearing. And our examination of the record discloses no merit whatever in the instant argument.

The order extending defendant Echols' commitment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.