[Civ. No. 67975. Second Dist., Div. Four. Apr. 20, 1983.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
VERNAL D., Real Party in Interest.

**COUNSEL**

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Lloyd Jeffrey Wiatt and Richard E. Ross for Real Party in Interest.

**OPINION**

**WOODS, P. J.**—We are presented with a petition for writ of mandate filed on behalf of the People of the State of California, seeking the annulment of a trial court order dismissing an application to extend the time of Youth Authority control over Vernal D., the real party in interest. We issued a stay of the superior court dismissal, and ordered that Vernal D. not be released from confinement under the California Youth Authority commitment, pending resolution of the within writ petition.

We have concluded that the trial court erroneously dismissed the application to extend Youth Authority control. We accordingly issue a writ of mandate, directing the superior court to conduct a hearing on the People's petition.

In August 1980, Vernal D. was committed to the California Youth Authority for a period of three years, with credit for previous time in confinement. From the time of his commitment until the fall of 1982, numerous incidents of assaultive behavior were reported concerning Vernal D. In September and October 1982, reports were submitted to the Youthful Offender Parole Board, recommending extended commitment, pursuant to Welfare and Institutions Code[1] section 1800 et seq., on the ground that he was too dangerous for release.[2]

---

[1] All references in this opinion to code sections shall refer to the Welfare and Institutions Code, unless otherwise stated.

[2] Section 1800 provides, in part: "Whenever the Youthful Offender Parole Board determines that the discharge of a person from the control of the Youth Authority . . . would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality, the board, through its chairman, shall make application to the committing court for an order directing that the person remain subject to the control of the authority beyond such time. . . ."

On November 18, 1982, the board ordered that Vernal D. be returned to court for extension of jurisdiction, based on his psychotic condition. A petition for extended commitment was filed with the superior court by the district attorney's office on January 6, 1983.

At the time of the hearing on the petition, the trial court dismissed the petition, relying on *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]. The court concluded that Vernal D., on March 5, 1983, would have been confined to the California Youth Authority for the maximum period for which an adult could have been sentenced to prison. Therefore, the court concluded that it had no jurisdiction to authorize commitment beyond March 5.

## I

■ We address first petitioner's contention that the trial court improperly found extended detention to be in violation of *People* v. *Olivas, supra,* 17 Cal.3d 236. Petitioner correctly asserts that there is no merit to the trial court's concern that *People* v. *Olivas, supra,* prohibited the extended commitment of dangerous persons. The court in *Olivas* held that a youthful offender may not be committed to the Youth Authority for any period of time longer than that for which an adult counterpart would have been sentenced to jail or prison for the same offense. That holding, affecting commitments in criminal proceedings, is of no consequence in extended involuntary commitment proceedings, instituted to provide additional treatment to dangerous persons.

In *In re Gary W.* (1971) 5 Cal.3d 296, 301 [96 Cal.Rptr. 1, 486 P.2d 1201], the Supreme Court considered the constitutionality of procedures in section 1800 et seq., and observed: " 'The issue is whether the statutory scheme here challenged (a) "imprisons" petitioner "as a criminal," or (b) constitutes "compulsory treatment" of petitioner as a sick person requiring "periods of involuntary confinement." ' [Citation.] The question is easily resolved, for the Legislature has been at pains to assure that confinement pursuant to sections 1800-1803 shall be only for the purpose of treatment." (See also *People* v. *Smith* (1971) 5 Cal.3d 313 [96 Cal.Rptr. 13, 486 P.2d 1213].)

The Supreme Court in *Gary W.* discussed the "demonstrably civil purpose of sections 1800-1803," (5 Cal.3d at p. 302) and concluded that commitment beyond the petitioner's normal release date, because of a finding of danger to society, violated neither due process nor equal protection, so long as the petitioner was provided with a right to trial by jury.

The trial court apparently believed that *Olivas,* rendered some years after the Supreme Court's decision in *Gary W.,* invalidated its conclusions. That it did not do so is evident from numerous recent California Supreme Court decisions

citing with approval both the extended commitment proceeding in section 1800 and the holding in *In re Gary W.*

In *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097], the Supreme Court established acceptable procedures for institutional confinement of persons committed to the Department of Health following their acquittal of criminal charges due to insanity. The court enumerated other approved involuntary proceedings as follows: "In addition to the present MDSO procedure, we further note a general and growing legislative pattern to preclude or minimize the risk of an indefinite commitment to state institutions by requiring periodic review and recommitment hearings in which the burden of proving the dangerousness of the committee's condition is placed on the state. (See Welf. & Inst. Code, §§ 1800 [two-year extended commitment for Youth Authority wards deemed dangerous at the time of discharge], 3201 [three-year extended commitment for narcotics addicts not cured after seven-year initial commitment], 5304 [LPS act commitment of dangerous persons limited to ninety days, unless new threats or harm occur], 5361 [one-year commitment of gravely disabled persons, unless new petition for conservatorship filed], 6500.1 [one-year commitment for mentally retarded persons unless recommitment justified], 6514 [one-year commitment for developmentally disabled persons, unless recommitment justified].)" (*Id.*, at p. 465.)

Similarly, in *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 172 [167 Cal.Rptr. 854, 616 P.2d 836], the Supreme Court compared and contrasted the legislative schemes for the continued confinement of dangerous persons, observing: "Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power. [¶] . . . [¶] The California scheme permits long-term, renewable commitments of persons found not guilty by reason of insanity (Pen. Code, § 1026 et seq.), mentally disordered sex offenders (MDSO's) (§ 6300 et seq.), and those committed to the Youth Authority (§ 1800 et seq.; *People* v. *Smith* (1971) 5 Cal.3d 313, 317 . . .)—in each case on proof that they remain dangerously disturbed."

*People* v. *Olivas, supra,* 17 Cal.3d 236, limits only the period of initial detention which may be served by a youthful offender. It does not limit or otherwise affect the potential duration of extended commitments on a finding that because of mental deficiency or abnormality the youth is physically dangerous to the public.

II

■ Vernal D. contends that even if *Olivas* did not authorize dismissal of the within application, it should have been dismissed, inasmuch as it was not timely

filed. Section 1800 provides that the "application shall be filed at least 90 days before the time of discharge otherwise required." Vernal D. argues that although the 90-day provision of section 1800 is not jurisdictional (citing *People* v. *Echols* (1982) 138 Cal.App.3d 838 [188 Cal.Rptr. 328]), nonetheless the petition should be dismissed unless the prosecution can show justification for failure to comply with the statutory time limit.

The following chronology led to the filing of the instant petition: On August 11, 1980, Vernal D. was committed to the California Youth Authority for the period of 3 years (less credit of 159 days). From the time of his commitment until September 1982, numerous incidents of assaultive behavior were committed.

On September 28, 1982, the program administrator of the intensive treatment program in which Vernal D. was participating recommended that he be returned to court for extended detention pursuant to section 1800.

On November 18, 1982, the Youthful Offender Parole Board ordered that Vernal D. be returned to court for extension of jurisdiction, based on his psychotic condition.

On December 14, 1982, staff counsel for the Youthful Offender Parole Board filed his evaluation and report, recommending extended commitment. On December 17, a letter was sent from the board to the district attorney requesting that a petition for extended detention be filed. The petition was filed with the superior court by the district attorney's office on January 6, 1983.

Vernal D. argues that inasmuch as he was scheduled for release from commitment on March 5, 1983 (the completion of his three-year commitment term), the petition was not filed in the superior court at least ninety days prior to that date. Therefore, it is argued, the application should have been dismissed by the superior court.

An identical contention was resolved to the contrary in *In re Cavanaugh* (1965) 234 Cal.App.2d 316, 319 [44 Cal.Rptr. 422]: "Appellant argues that this failure to comply with the 90-day requirement of section 1800 divested the court of jurisdiction. He urges that the 90-day period established by statute operates in the same fashion as a statute of limitations in criminal cases, where the running of the statute against a charged offense operates to deprive the court of jurisdiction. [Citation.] This is not correct. Appellant was originally committed to the Youth Authority by the juvenile court. All proceedings leading up to the order here challenged took place in that court. Such proceedings are civil in nature, designed to 'serve the spiritual, emotional, mental and physical welfare of the minor and the best interests of the State; . . .' [Citations.] Section 1800

vests jurisdiction in the committing court to hear and determine petitions filed thereunder. Although the petition was not timely filed, this error did not deprive the court of jurisdiction. The statute does not purport to restrict the court's power to act where the petition is not filed within the stated period of 90 days, nor is any penalty attached for noncompliance. Thus the court had jurisdiction and authority to issue its order, despite respondent's failure to file the petition within the stated time."

We agree with the conclusion of the *Cavanaugh* court. Nor are we persuaded that any different result is compelled by *People* v. *Echols, supra,* 138 Cal.App.3d 838. The *Echols* court held that the time limit requirements of section 1026.5 are not jurisdictional. However, the court concluded that considerations of due process required an inquiry into whether the defendant was harmed by the late filing. The court likened the problem to that presented by speedy trial violations and concluded that the proper test involved the balancing of the prejudicial effect of the delay against the justification for the delay. (*People* v. *Echols, supra,* at p. 842.) The court there found the justification adequate and the prejudice nonexistent and thus affirmed the commitment order.

Here, Vernal D. argues that no justification for the delay having been demonstrated, the petition cannot be entertained. Even accepting the argument that *Echols* (involving a different code section) imposes a due process analysis on a late filing under section 1800, we do not agree with the conclusion reached by Vernal D.

The record reflects that the December 18, 1982, letter from the Youthful Offender Parole Board to the district attorney's office, requesting the filing of a petition, enclosed with it reports in support of the petition. Two reports, dated December 14, elaborated on Vernal D.'s history of assaultive behavior and detailed the many psychological and psychiatric reports prepared in connection with his conduct and treatment. To be timely, the superior court petition should have been filed by December 5, 1982. The order of the Youthful Offender Parole Board, requiring a petition, was not issued until November 18. We do not believe that the expenditure of approximately four weeks for documentation of the need for extended commitment is unreasonable. Additionally, the record reflects no prejudice to Vernal D. by virtue of the late filing. Therefore, the court had jurisdiction to entertain the petition for extended commitment.

## III

■ Finally, Vernal D. contends that the statute is unconstitutional, in that it authorizes extended commitment based on a less than unanimous jury verdict. We agree with Vernal D. that a commitment based on a verdict by only three-fourths of the members of the jury does not comport with either due process or

equal protection. Therefore, at the extended commitment hearing, to be held under the terms of the writ which we hereby issue, Vernal D. may be found dangerous to the public and subject to involuntary confinement only on the basis of a verdict by a unanimous jury.

This conclusion is mandated under the principles of equal protection. Numerous circumstances exist in California law under which a person may be involuntarily committed. As to each, a statutory and judicial scheme has been created to assure that the commitment comports with due process. With respect to trial by jury, no involuntary commitment procedure remains on the books allowing a less than unanimous jury verdict except for the extended commitment of dangerous youthful offenders under section 1800. As to mentally disordered sex offenders, sections 6318 and 6321 originally authorized a verdict by three-fourths of the jury; in *People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373], the California Supreme Court mandated a unanimous verdict. Section 6509 was silent on the number of jurors required to confine mentally retarded dangerous persons. In *In re Hop* (1981) 29 Cal.3d 82 [171 Cal.Rptr. 721, 623 P.2d 282], the Supreme Court declared that nothing less than a unanimous verdict would comport with due process. Likewise, section 3108 authorized involuntary commitment of narcotics addicts by three-quarters of the jury. In *People* v. *Thomas* (1977) 19 Cal.3d 630 [139 Cal.Rptr. 594, 566 P.2d 228], the Supreme Court declared that due process and equal protection mandated a unanimous verdict. Sections 5302 and 5303 require a verdict by a unanimous jury in order to authorize the involuntary commitment of imminently dangerous persons, or those who are gravely disabled, suicidal, or inebriate.

Unquestionably, equal protection compels a unanimous verdict for the involuntary commitment of youthful offenders as well. No distinctions are evident which would justify disparate treatment of youthful offenders, committed to the California Youth Authority, who are denied release based on a finding that they are dangerous to themselves or others. Both equal protection and due process obviously compel the requirement of a unanimous jury verdict. The courts have soundly rejected arguments that these proceedings are civil in nature and therefore entitled to different treatment. ██ ██ ██ The consequence of the proceeding, involuntary incarceration, triggers the full panoply of due process protections.[3]

---

[3]Although Vernal D. does not discuss the standard of proof which should be applied in these proceedings, for the guidance of the trial court we explain that in order to comply with the requirements of the due process clauses of the California and federal Constitutions, extended detention under section 1800 must be justified by proof beyond a reasonable doubt. Section 1801.5 implies, in providing that "[t]he trial shall be had as provided by law for the trial of civil cases," that proof by a preponderance of the evidence is satisfactory. It is now well established in California that so drastic an impairment of liberty as is suffered by involuntary commitment may not be supported on any lesser standard than proof beyond a reasonable doubt. (*People* v. *Feagley, supra,* 14 Cal.3d 338, 345; *People* v. *Burnick* (1975) 14 Cal.3d 306, 310 [121 Cal.Rptr. 488, 535 P.2d 352].)

Since the decision in *Gary W.*, the Supreme Court has held that both mentally disordered sex offenders (*People* v. *Feagley, supra,* 14 Cal.3d 338), and narcotics addicts (*People* v. *Thomas, supra,* 19 Cal.3d 630), are entitled to a unanimous verdict prior to involuntary commitment. Similarly, if for no other reason than that the Supreme Court has previously determined that no constitutional distinction exists among those committees, dangerous youthful offenders are entitled to the same constitutional protections.

Let a peremptory writ of mandate issue directing the trial court to conduct a hearing on petitioner's application to extend Youth Authority control over Vernal D.; unless waived, Vernal D. is entitled to a trial by jury on the issue of dangerousness; his dangerousness must be established by proof beyond a reasonable doubt; and he may not be involuntarily committed on anything less than a unanimous verdict of that jury.

Kingsley, J., and McClosky, J., concurred.

A petition for a rehearing was denied May 11, 1983, and the petition of real party in interest for a hearing by the Supreme Court was denied July 27, 1983.