[Crim. No. 15194. Fourth Dist., Div. One. Oct. 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS ISRAEL HERNANDEZ, Defendant and Appellant.

**COUNSEL**

Michael D. McGlinn, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—Carlos Israel Hernandez appeals the order continuing his detention for treatment by the Youth Authority (YA) after the court found that if he were to be released he would be "physically dangerous to the public because of [his] mental or physical deficiency, disorder, or abnormality." (See Welf. & Inst. Code, §§ 1800-1803.)[1] We decide the untimely

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

The relevant portions of the cited sections are as follows:

Section 1800: "Whenever the Youthful Offender Parole Board determines that the discharge of a person from the control of the Youth Authority at the time required by Section 1769, 1770, 1770.1, or 1771, as applicable, would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality, the board, . . . shall make application to the committing court for an order directing that the person remain subject to the control of the authority beyond such time. The application shall be filed at least 90 days before the time of discharge otherwise required. The application shall be accompanied by a written statement of the facts upon which the board bases its opinion that discharge from control of the Youth Authority at the time stated would be physically dangerous to the public, but no such application shall be dismissed nor shall an order be denied merely because of technical defects in the application."

Section 1801: "If the board applies to the court for an order as provided in Section 1800, the court shall notify the person whose liberty is involved, . . . and shall afford him an opportunity to appear in court with the aid of counsel and of process to compel attendance of witnesses and production of evidence. When he is unable to provide his own counsel, the court shall appoint counsel to represent him. [¶] If after a full hearing the court is of the opinion that discharge of the person would be physically dangerous to the public because of his mental or physical deficiency, disorder, or abnormality the court shall order the Youth Authority to continue treatment of such person. . . ."

Section 1801.5: "If the person is ordered returned to the Youth Authority following a hearing by the court, he, . . . may, within 10 days after the making of such order, file a written demand that the question of whether he is physically dangerous to the public be tried by a jury in the superior court of the county in which he was committed. . . . The court shall submit to the jury the question: Is the person physically dangerous to the public because of his mental or physical deficiency, disorder or abnormality? . . ."

Section 1802: "When an order for continued detention is made as provided in Section 1801, the control of the authority over the person shall continue, subject to the provisions of this chapter, but, unless the person is previously discharged as provided in Section 1766, the Youthful Offender Parole Board shall, within two years after the date of such order in the case of persons committed by the juvenile court, or within two years after the date of such order in the case of persons committed after conviction in criminal proceedings, file a new application for continued detention in accordance with the provisions of Section 1800 if continued detention is deemed necessary. Such applications may be repeated at intervals as often as in the opinion of the board may be necessary for the protection of the public, except that the department shall have the power, in order to protect other persons in the custody of the department to transfer the custody of any person over 21 years of age to the Director of Corrections for placement in the appropriate institution."

Section 1803: "An order of the committing court made pursuant to this article is appealable by the person whose liberty is involved in the same manner as a judgment in a criminal case. . . ."

petition under section 1800 denied Hernandez due process of law. Because his term of commitment has since expired we therefore reverse with instructions to the trial court to order his release.

*Factual and Procedural Background*

On December 18, 1980, Hernandez entered a negotiated guilty plea to burglary and was committed to YA for two years with a release date set for July 18, 1982. On June 29, 1982, the San Diego District Attorney applied for an order directing Hernandez to remain subject to the control of YA beyond the time set for his discharge because if released he would be physically dangerous to the public. (§ 1800; see also fn. 1, *ante.*) The hearing on the application was set for July 15. On that day Hernandez appeared but the hearing was continued to the following day so his lawyer, Laura Berend, could also be present. On the 16th Berend objected to the hearing on the grounds she was unprepared. She had received the papers only "within the last week" and had been told by the deputy district attorney the hearing was to have been continued. She represented to the court that if she had been given adequate notice she would have had Hernandez examined by a psychologist in order to contradict the conclusions in the psychological report supporting the application for extended commitment. After overruling her objections and hearing the testimony from the YA psychologist who had examined Hernandez, the court found the discharge of Hernandez would be physically dangerous to the public and ordered him to remain subject to the control of YA beyond his commitment date. The court granted Berend's motion to be relieved as counsel and continued the hearing until July 20 with new counsel to determine whether Hernandez wished a jury trial under section 1801.5 on the issue of whether he was physically dangerous to the public. (See fn. 1, *ante.*) On July 23, Hernandez appeared with his newly appointed counsel, waived his right to a jury trial, but repeated the objections which had been made to the earlier proceedings.

*Discussion*

Sections 1800-1802 provide the statutory mechanism through which terms of persons committed to YA can be extended for treatment because of the danger such persons would otherwise be to the public. After identifying the individual having such dangerous propensities, the application seeking the order under section 1800 must be filed at least 90 days before the time of discharge otherwise required. ■ The 90-day time limit is not jurisdictional, however, and untimely application is valid provided the person whose liberty is at stake is not denied due process of law. (See *People v. Superior Court (Vernal D.)* (1983) 142 Cal.App.3d 29, 35 [190 Cal.Rptr.

721]; *In re Cavanaugh* (1965) 234 Cal.App.2d 316, 319-320 [44 Cal.Rptr. 422].)

Legal analysis of the effect of an untimely application should involve "a balancing of any prejudicial effect of the delay against the justification for delay." (*People* v. *Echols* (1982) 138 Cal.App.3d 838, 842 [188 Cal.Rptr. 328] [applying speedy trial test to late filing under Pen. Code, § 1026.5]; see also *People* v. *Superior Court (Vernal D.)*, *supra*, 142 Cal.App.3d at p. 35.) The test is simple enough to apply when the section 1800 application is filed not long after the 90-day period begins. Adequate time is still available to fully prepare with counsel and present whatever defense evidence may be appropriate, thereby avoiding any prejudicial effect. Delay in such a case, even if unjustified, will not be found to deny due process. Obviously, the more difficult problem is where the section 1800 application crowds the last several days of the 90-day period.

■ Due process is not a concept to be taken lightly. It connotes the type of constitutionally mandated procedures that must be afforded an individual. "Its content is a function of many variables, including the nature of the right affected. . . ." (*Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].) "The extent to which procedural due process must be afforded [an individual] is influenced by the extent to which he may be 'condemned to suffer grievous loss,' [citation], and depends upon whether the [individual's] interest in avoiding that loss outweighs the governmental interest in summary adjudication." (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 262-263 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 558 [96 Cal.Rptr. 709, 488 P.2d 13] cert. den., 407 U.S. 924 [32 L.Ed.2d 811, 92 S.Ct. 2452].) In effect, as the significance of the interest involved increases, so does the level of procedural protection required by due process. (See *Randone* v. *Appellate Department, supra*, 5 Cal.3d at p. 558 and accompanying citations.)

The Legislature has recognized the importance of the rights at stake in section 1800 proceedings. It expressly provided for "aid of counsel," the right "to compel attendance of witnesses and production of evidence" and a "full hearing." (§ 1801; see fn. 1, *ante.*) Although the initial finding does not terminate the proceedings, because the detainee has the right to a jury trial on the issue of dangerousness under section 1801.5, it is nonetheless a crucial and essential preliminary finding with enormous consequences to the individual whose liberty is at stake. There is no law in California, statutory or otherwise, that is truly comparable to sections 1800-1802. Those sections set in motion factual findings which can result in an individual's loss of liberty for life on facts unrelated to the commitment of any earlier criminal

offense and absent any commission of an overt act manifesting dangerousness. After the significant preliminary judicial determination is made, the jury called upon to decide the single issue of whether the individual is physically dangerous to the public is given little, if any, objective criteria on which to base their response. (See Fleischli, *A Dangerous Commitment* (1974) 2 Pepperdine L.Rev. 116.) It must also be remembered that the section 1800 proceeding results in confinement, albeit for treatment, at either YA, the most restrictive of all facilities for youthful offenders and the same place where the offender had been unsuccessfully placed for rehabilitation or, where as here, the person is over 21, at other "appropriate" institutions selected by the director of corrections. (§ 1802.)

It is with these considerations in mind we examine Hernandez' due process challenge. Here, the section 1800 petition was filed 17 days before the hearing. Nothing contradicts Berend's statement she had only received the papers "within the week" nor is there anything contradicting her statement that given additional time she would have been able to retain an expert to examine Hernandez to assist in the preparation of his defense at the hearing. Lacking adequate preparation, Hernandez was denied the effective assistance of counsel at this crucial hearing.

Moreover, there is no justification for the delay. The assaultive conduct upon which the extended detention was based occurred between July 1981 and February 1982. Even with the enormous administrative burdens on YA, there is no reason for this unwarranted delay. We therefore hold the untimely filing denied Hernandez due process of law required by the statute. Because his term of commitment has since expired, we reverse with instructions to the trial court to order his release.[2]

*Disposition*

Order reversed; the trial court is instructed to release Hernandez.

Brown (Gerald), P. J., and Work, J., concurred.

---

[2]We do not ignore the possibility Hernandez may currently present a danger to the public. The Lanterman-Petris-Short Act (§ 5000 et seq.) is designed to address this problem. If necessary for public safety, proceedings may be instituted in accordance with that act.