[No. G008680. Fourth Dist., Div. Three. Feb. 28, 1990.]

ALFRED CHAPARRO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

R. Zaiden Corrado and Kevin F. Harrison for Petitioner.

No appearance for Respondent.

Cecil Hicks and Michael R. Capizzi, District Attorneys, Maurice L. Evans, Assistant District Attorney, Thomas M. Goethals and David A. Frank, Deputy District Attorneys, for Real Party in Interest.

OPINION

SCOVILLE, P. J.—Petitioner Alfred Chaparro was sentenced to the California Youth Authority in 1983 following his convictions for five felonies. Almost six years later, he was returned to court for resentencing. We stayed the resentencing rehearing and issued an order to show cause on his petition for writ of habeas corpus to determine the jurisdiction of the court to summarily commit him to prison or impose any other sentence without further hearing.

I

Petitioner was 17 years old at the time of his offenses. He was found unfit for juvenile court treatment and remanded to adult court. (Welf. & Inst.

Code, § 707.)[1] During jury selection, petitioner entered into a plea bargain, pleading guilty to two counts of burglary, one count of forcible rape, one count of rape of an unconscious person, and one count of assault with a deadly weapon. The court committed him to the California Youth Authority (Youth Authority) for a maximum term of 11 years. Petitioner was 19 years old at the time he was sentenced to the Authority. He turned 25 on September 18, 1989, the age at which the Authority would ordinarily have to order his discharge. (§ 1771.)

The parties belabor petitioner's "treatment" program and progress at the Authority. The prosecution emphasizes the negatives; petitioner highlights the positives. At his first appearance before the parole board he was referred to Atascadero State Hospital; the board noted petitioner's resistance to therapy and the need for "long protracted treatment." Petitioner was rejected by the program at Atascadero and apparently placed in the general population. A March 1985 annual review noted petitioner was rejected from another special counseling program because he was not sufficiently motivated to participate. He was directed to complete a formal drug program despite his reluctance to participate. Similar negative reports appear in the notes from a second annual review in December 1985. The board noted its opposition to release unless petitioner completed a sexual offender program, again commenting he continued to be resistive to treatment. By July of 1986 he had, however, completed a drug awareness program and was transferred into the specialized counseling program.

At his first actual parole consideration hearing in October 1986, petitioner was denied parole. Notes indicate "little remorse for his victims" and "heavy denial" of the need for treatment. Petitioner was disciplined by the board four months later, for narcotics use, and his parole date was continued for a year. His next appearance before the board occurred in March of 1988—for discipline proceedings arising out of verbal threats to harm the staff, for annual review and for parole consideration. Petitioner's case was continued for six months. The board noted that "staff indicate he is beginning to demonstrate a willingness to work with female staff and is making an honest effort to explore these areas." Progress was short-lived, however. A substantial quantity of marijuana was found in petitioner's room, and he was temporarily transferred out of the specialized counseling program. Reports at that time commented on his danger to the public; despite two years of drug counseling and sex therapy, he was still resistant, unmotivated and making "only very slow and intermittent progress . . . ."

At his next appearance for a progress review in September 1988, the board noted the need for petitioner to complete the sex offender component

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

of his specialized treatment program, although he had been removed from the program "because of a lack of motivation, chronic resistance, and evasion of responsibility." An assessment for an extension pursuant to section 1800 was ordered and the matter was reset for a further appearance in February of 1989. The resultant reports concluded petitioner was not suitable for such an extension because he did not suffer from the type of "mental or physical deficiency, disorder, or abnormality" required to extend his commitment in the Authority beyond his 25th birthday. (§ 1800.)

Petitioner next appeared before the parole board in May 1989. During his stay at the Youth Authority petitioner had achieved several goals: He had received his high school diploma, received a certificate of achievement in micrographics technology, received a commendation award for volunteering in the Youth Training School work program, had achieved the skill level necessary to start a masonry apprenticeship, and had received offers of employment. The counselors at the Youth Training School recommended petitioner be paroled.

The review board disagreed and parole was denied. The board noted: "Ward's denial and rigidity have caused him to fail [Youth Authority] treatment, including sex-offender treatment in the [specialized counseling program]. He still presents a serious danger to the public. Panel believes he will rape again." It was recommended the full board petition the court under section 1780 to commit petitioner to state prison after expiration of his Youth Authority term at the age of 25. The board noted the police were strongly opposed to parole. One of petitioner's victims had requested notice of his potential release, but she was apparently not notified of the parole hearing as required by section 1767.

The full board met in June 1989, less than three months before his 25th birthday, to consider petitioner's matter. The panel voted to return petitioner to court pursuant to section 1737.1, reciting that petitioner "is considered to be a danger to society."

Petitioner appeared in superior court in September 1989. Counsel objected to the court's jurisdiction to resentence petitioner pursuant to section 1737.1. The court disagreed and scheduled the matter for a second hearing, allowing petitioner the opportunity to present written arguments in favor of mitigation before being resentenced. Petitioner brought this extraordinary writ petition, and we stayed the resentencing hearing.

## II

Petitioner seeks release from custody, arguing the Youth Authority's order to return him to court was an abuse of discretion "designed to deny

petitioner his statutory and constitutional right to due process of law." He has since reached the age of 25 and urges neither the superior court nor the Youth Authority has any continuing jurisdiction to detain him.

In most instances an offender cannot be held in the Youth Authority beyond his 25th birthday. Section 1771 provides: "Every person convicted of a felony and committed to the authority shall be discharged when such person reaches his 25th birthday, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with § 1800) or unless a petition is filed under Article 5 of this chapter. In the event such a petition under Article 5 is filed, the authority shall retain control until the final disposition of the proceeding under Article 5."

Article 6, beginning with section 1800, outlines a procedure for petitioning the court for an extension whenever the parole board determines discharge "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality . . . . " (§ 1800.) Section 1801.5 provides the offender a jury trial on the question of whether he or she is physically dangerous. Here, the board initially considered extending petitioner's commitment under article 6, but found he did not suffer from the type of "deficiency, disorder, or abnormality" required to invoke that procedure.

Article 5, beginning with section 1780, provides: "If the date of discharge occurs before the expiration of a period of control equal to the maximum term prescribed by law for the offense of which he or she was convicted, and if the Youthful Offender Parole Board believes that unrestrained freedom for said person would be dangerous to the public, the board shall petition the court by which the commitment was made. [¶] The petition shall be accompanied by a written statement of the facts upon which the board bases its opinion that discharge from its control at the time stated would be dangerous to the public, but no such petition shall be dismissed merely because of its form or an asserted insufficiency of its allegations; every order shall be reviewed upon its merits." Section 1781 requires the court to give notice of the petition to the offender, and "shall afford him an opportunity to appear in court with the aid of counsel and of process to compel attendance of witnesses and production of evidence." And the board must give notice of the petition and any court hearing to the person's attorney, the district attorney, the investigating law enforcement agency, and the victim of a rape or the next of kin of a murder victim if he or she has requested such notice. Here, the board's notes indicate it considered a petition to the court under article 5, but no such petition was ever filed.

Instead, the board opted to return petitioner to court under section 1737.1, which provides: "Whenever any person who has been convicted of a

public offense in adult court and committed to and accepted by the Youth Authority appears to the Youthful Offender Parole Board, either at the time of his or her first appearance before the board *or thereafter,* to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such a person to the committing court. The court may then commit the person to a state prison or sentence him or her to a county jail as provided by law for punishment of the offense of which he or she was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he or she was convicted less the period during which he or she was under the control of the Youth Authority. This section shall not apply to commitments from juvenile court." (§ 1737.1, italics added.)

On its face, the return to court for resentencing under section 1737.1 is a summary proceeding, without any express provision for a hearing, let alone a jury trial. That is the procedure the trial court proposes to adopt here: a simple sentencing hearing, as if petitioner was appearing for the first time after conviction, but affording credit for time already served in the Youth Authority.

Petitioner asserts his return to court under section 1737.1 was an abuse of discretion. We agree. The board's reason for returning petitioner to court— his dangerousness—is not listed in section 1737.1. It is, however, one of the grounds listed in section 1780. Thus, we deem it appropriate to construe the board's order as having been made under section 1780.

The prosecution concedes that petitioner's situation overlaps section 1780 and section 1737.1. Section 1780 et seq. applies expressly to the situation where a discharge is imminent because of the offender's age. The return to court under that section is required because time has run out, irrespective of the Youth Authority's desire or ability to continue to treat the offender. The petition returning him or her to court is based on the opinion he or she remains dangerous to the public. No such finding is required to return an offender to court under section 1737.1. That section applies whenever the board determines the offender is an improper person to be retained in the Youth Authority, or is so incorrigible or so incapable of reformation that his or her continued detention there would be detrimental to others.

Curiously, the board determined petitioner was a danger to others, but instead of petitioning the committing court under section 1780, the board

chose to summarily reject him from the Authority by ordering his return to court under section 1737.1. It is ironic that the summary procedure was employed a mere three months before the Youth Authority would have otherwise lost jurisdiction. But there is no evidence to suggest the decision was intended to deprive petitioner of due process, despite petitioner's arguments to the contrary. Indeed, it may even have been a clerical error. There was no reference to the board's opinion petitioner was an unfit subject for Youth Authority treatment or that he was untreatable. Rather, utilizing the language of section 1780, the board returned petitioner because of his alleged dangerousness to society. Petitioner is entitled to a hearing under section 1781 on that allegation.

### III

■   The technical requirements of section 1780 were not met because there was no petition "accompanied by a written statement of the facts upon which the board bases its opinion that discharge from its control at the time stated would be dangerous to the public . . . ." (§ 1780.) But the statute expressly provides for liberal review of the sufficiency of the petition: "[N]o such petition shall be dismissed merely because of its form or an asserted insufficiency of its allegations; every order shall be reviewed upon its merits." (§ 1780.) Indeed, petitioner has been given notice of the substance of the board's decision, which alleges he is a danger to society.

Contrary to petitioner's assertion, he is not entitled to immediate release because the time within which to consider a petition under section 1780 has not expired. Our construction of the section 1737.1 order as a petition under 1780 properly extends the time because section 1771 expressly provides for the Youth Authority's continuing jurisdiction "until the final disposition of the proceeding under Article 5 [section 1780 et seq.]" The committing court and the board should now proceed with the prehearing notice to other parties as required by section 1781.

■   Petitioner asserts a petition under section 1780 must be resolved in a jury trial, with the burden of proof beyond a reasonable doubt. The People complain because he did not request a jury in the trial court yet seeks appellate review of the failure to provide him that benefit. In fact, he never concedes the petition might be construed as one under section 1780 and does not demand we order a jury trial on remand. Rather, he argues the board violated his rights to due process and equal protection by denying him a hearing under section 1780, which he believes would necessarily involve a jury trial and a standard of proof beyond a reasonable doubt. We disagree and explain why, for the guidance of the superior court.

A person committed on the basis of dangerousness pursuant to section 1800 is entitled to a jury trial and proof beyond a reasonable doubt. (*In re Gary W.* (1971) 5 Cal.3d 296 [96 Cal.Rptr. 1, 486 P.2d 1201]; *People v. Superior Court* (*Vernal D.*) (1983) 142 Cal.App.3d 29 [190 Cal.Rptr. 721].) But that section applies to commitments to the Youth Authority where the person has a mental or physical deficiency causing the dangerousness. An infinite number of two-year extensions are possible, if the person remains dangerous. The extensions may lead to confinement beyond the maximum time of the original commitment. Extensions under section 1800 are involuntary commitments, irrespective of the original commitment term.

Here, by contrast, the court has several options. It may discharge petitioner, grant probation, or order him committed to state prison. (§ 1782.) In no event will he serve longer than the original 11-year sentence. Moreover, all of these options were known when petitioner was originally committed to the Youth Authority. Petitioner, who will be resentenced after a hearing pursuant to section 1780 et seq., is therefore not similarly situated to a person whose Youth Authority commitment is extended under section 1800. (See, e.g., *In re Roger S.* (1977) 19 Cal.3d 921, 934 [141 Cal.Rptr. 298, 569 P.2d 1286].) Indeed, petitioner waived his right to a jury trial when he pleaded guilty and entered into a plea bargain for an 11-year maximum term. Any decision to order he complete that term need not be made by a jury.

Section 1781 describes the type of hearing to be conducted. Petitioner may appeal any resultant commitment to prison. (§ 1783.) Our construction of the board's order as a petition under section 1780 adequately protects petitioner's constitutional guaranties.

Let a writ of mandate issue directing the trial court to conduct a hearing, consistent with this opinion, on the petition for commitment under section 1780.

Crosby, J., and Taylor, J.,* concurred.

A petition for rehearing was denied March 20, 1990.

---

*Assigned by the Chairperson of the Judicial Council.