[No. H029842. Sixth Dist. Sept. 28, 2006.]

In re DONALD SCHMIDT on Habeas Corpus.

696

**COUNSEL**

Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Anya M. Binsacca and Scott C. Mather, Deputy Attorneys General, for Plaintiff and Appellant the People.

Michael A. Kresser, under appointment by the Court of Appeal, for Defendant and Respondent Donald Schmidt.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

Donald Schmidt, age 34, seeks his release on parole from the California Department of Corrections and Rehabilitation, Division of Juvenile Facilities (formerly, the Department of the Youth Authority).[1] In 1989 the juvenile court sustained a Welfare and Institutions Code section 602[2] petition alleging that 16-year-old Schmidt had committed sodomy and first degree murder of a three-year-old girl. Schmidt was committed to the CYA on October 4, 1989. At the age of 25 his commitment was extended by trial court order pursuant to section 1800, which at that time authorized a two-year extension of commitment where discharge of a person from the control of the CYA "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality." (Former § 1800; see *In re Howard N.* (2005) 35 Cal.4th 117, 126 [24 Cal.Rptr.3d 866, 106 P.3d 305].)[3] Subsequently, Schmidt's CYA commitment was extended under section 1800 for three additional two-year periods. His current two-year commitment began on November 8, 2004, and expires on November 8, 2006.

On June 21, 2005, the Youthful Offender Parole Board (Parole Board)[4] ordered that Schmidt be released on parole. Six days later, on June 27, 2005, the Parole Board vacated its parole release order on the ground that it did not have the authority to parole a person committed under section 1800. Schmidt then filed a petition for a writ of habeas corpus in which he sought reinstatement of the original parole release order. The trial court granted the

---

[1] Effective July 1, 2005, the California Youth Authority is known as the Department of Corrections and Rehabilitation, Division of Juvenile Facilities. (Pen. Code, § 6001; Welf. & Inst. Code, § 1710.) For ease of reference and because the name change occurred during the course of the proceedings at issue in the present appeal, we will use the acronym CYA throughout this opinion to refer to the California Department of the Youth Authority and its new name, the Department of Corrections and Rehabilitation, Division of Juvenile Facilities.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] The California Supreme Court in *In re Howard N.*, *supra*, 35 Cal.4th at page 132, determined that to preserve its constitutionality, the statutory scheme for extended commitment, section 1800 et seq., "should be interpreted to contain a requirement of serious difficulty in controlling dangerous behavior." The Legislature amended section 1800, effective July 21, 2005, to expressly include that requirement. (Stats. 2005, ch. 110, § 1.)

[4] On July 1, 2005, the Youthful Offender Parole Board and Youth Authority Board were replaced by the Board of Parole Hearings. (§§ 1716, 1725.) For ease of reference and because the name change occurred in the course of these proceedings, we will refer to the Board of Parole Hearings as the Parole Board throughout this opinion.

petition on the ground that under the statutory scheme for extended commitment, section 1800 et seq., the Parole Board maintained control of the committed person subject to the provisions authorizing parole and discharge.

On appeal, the People contend that the Parole Board acted lawfully in vacating its original parole order because the statutes governing extended commitment, section 1800 et seq., do not authorize release on parole. Schmidt disagrees. He construes the statutes governing extended commitment to provide that the CYA's control over a person committed under section 1800 includes the power to release the committed person on parole. After carefully examining the relevant statutes, we conclude that the CYA is not authorized to release on parole a person committed under section 1800.

However, we also determine that the CYA is authorized under the statutory scheme for extended commitment to conditionally release Schmidt during his current extended commitment period. Therefore, we will reverse the order granting Schmidt's petition for a writ of habeas corpus and remand the matter to the trial court with instructions to vacate its order reinstating the June 21, 2005, parole release order and to issue a new order remanding the matter to the Parole Board for further proceedings in accordance with due process and the views expressed in this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *CYA Commitment Proceedings*

On January 4, 1989, a section 602[5] petition was filed alleging that Schmidt had committed the sodomy and first degree murder of a three-year-old girl.[6] The evidence presented at the jurisdictional hearing showed that Schmidt was 16 years old on December 30, 1988, when he visited the home where the victim, M., resided with her family. While M. and her two-year-old sister were taking a bath, their mother allowed Schmidt to enter the bathroom and wash his hair. While Schmidt was still in the bathroom, M.'s mother

---

[5] In 1989, former section 602 provided, "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[6] We take judicial notice of this court's opinion in three previous appeals, *In re Donald S.* (May 31, 1991, H006500) (nonpub. opn.), *In re Donald S.* (Feb. 4, 1993, H009440) (nonpub. opn.), and *People v. Schmidt* (Oct. 11, 2002, H020580) (nonpub. opn.). (Evid. Code, § 452, subd. (d).) Our summary of the pertinent factual and procedural background of this case includes some background information taken from our prior opinions that was not included in the record on the present appeal.

took M.'s sister out of the bathtub and went to a bedroom to get clothing. M. remained alone in the bathtub.

When M.'s mother came out of the bedroom five minutes later, she encountered Schmidt carrying M. from the bathroom and exclaiming, "I'm sorry. I didn't mean to do it." M. was taken to the hospital by ambulance but died two days later, on January 1, 1989. The autopsy showed that M. died as the result of a brain injury caused by drowning. Additionally, the autopsy revealed a recently inflicted two and one-half inch hemorrhage consistent with forcible penetration of M.'s rectum by either a penis or a dildo-type object.

At the end of the jurisdictional hearing the trial court found true the allegations of sodomy and first degree murder (based on homicide during the act of a felony sexual assault). Schmidt was committed to the CYA for a maximum life term. After two appeals (*In re Donald S.*, *supra*, H006500; *In re Donald S.*, *supra*, H009440), this court struck the first degree murder finding and affirmed a finding of second degree murder.

Schmidt was not released from the CYA when he reached the age of 25 in March 1997. His commitment was extended for two years pursuant to section 1800[7] by a February 1997 trial court order. Before the extended commitment ended on February 25, 1999, the Parole Board initiated proceedings to release Schmidt on parole. The district attorney opposed Schmidt's release and retained a psychiatrist who reported that Schmidt was physically dangerous to the public due to a mental disorder or abnormality. At a hearing held January 29, 1999, the Parole Board considered the opinion of the district attorney's psychiatrist as well as the opinion of a CYA psychologist who recommended that Schmidt be released on parole. After the hearing, the Parole Board denied parole and recommended an expedited section 1800 proceeding.

On February 8, 1999, the district attorney filed a section 1800 petition to extend Schmidt's commitment for a second two-year period and the matter

---

[7] In 1997, former section 1800 provided, "Whenever the Youthful Offender Parole Board determines that the discharge of a person from the control of the Youth Authority at the time required by Section 1766, 1769, 1770, 1770.1, or 1771, as applicable, would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality, the board, through its chairman, shall request the prosecuting attorney to petition the committing court for an order directing that the person remain subject to the control of the authority beyond that time. The petition shall be filed at least 90 days before the time of discharge otherwise required. The petition shall be accompanied by a written statement of the facts upon which the board bases its opinion that discharge from control of the Youth Authority at the time stated would be physically dangerous to the public, but no such petition shall be dismissed nor shall an order be denied merely because of technical defects in the application. [¶] The prosecuting attorney shall promptly notify the Youthful Offender Parole Board of a decision not to file a petition."

proceeded to a jury trial. After a mistrial, a second jury found in September 1999 that Schmidt was physically dangerous to the public and the trial court extended Schmidt's CYA commitment for two more years. Schmidt's trial testimony included his admission that he picked M. as his victim because she could not fight back and because he felt like destroying her life in the same way his own life had been destroyed by child abuse. He decided to sodomize M. only after he entered the bathroom, and he thought of his girlfriend in order to get an erection. Schmidt further admitted that he left M. in the tub, went to the kitchen and smoked a cigarette, and then returned to the bathroom and pretended to discover that M. had accidentally drowned. CYA staff testified that Schmidt had given varying accounts of his offense, including telling them that he had held M. underwater to keep her from crying and that she was flailing when he sodomized her. On appeal, this court affirmed the order extending Schmidt's commitment to the CYA. (*People v. Schmidt, supra,* H020580.)

Schmidt's CYA commitment was further extended by two subsequent section 1800 proceedings.[8] His current two-year commitment commenced on November 8, 2004, after he waived a section 1800 hearing. According to Schmidt, he "submitted to the [section 1800] petition knowing that his [CYA] treatment team was planning to recommend that he be paroled in 'maybe a few more months.' " Schmidt's commitment expires on November 8, 2006.

### B. *Current Parole Proceedings*

In February 2005, the CYA treatment team recommended that Schmidt be paroled at the time of the parole hearing that was to be held in May 2005. The recommendation was included in a parole consideration hearing report, dated February 7, 2005. In the report, the treatment team reviewed the circumstances of Schmidt's offense, his current behavioral issues, his exemplary interactions with peers and staff, his educational and employment background, and other matters relevant to the team's parole recommendation. The report concluded, "Donald has completed all of his Board ordered and staff identified group requirements several times over. He has utilized every program the Youth Authority has to offer with the exception of parole supervision. The treatment team recommends parole at his Projected Board Date of May 2005 in order to take advantage of parole services and support during his reintegration into the community."

Thereafter, in a letter dated February 18, 2005, the Parole Board notified the trial court, the public defender, the county sheriff, and the district attorney

---

[8] The record on appeal lacks any further information with respect to the section 1800 commitment proceedings that took place between 1999 and 2004.

that the board would review Schmidt for consideration of parole on or after 30 days. After the parole hearing was held the Parole Board issued its June 21, 2005, order releasing Schmidt on parole "on or after 6/21/05." The order specified numerous conditions of parole, including, among other things, placement in the Plaza Hotel, electronic monitoring, participation in a "substance/anger management program," 80 hours of community service, drug and alcohol testing, and counseling. Additionally, Schmidt was prohibited from being present in the area of nightclubs and where minors congregate. He was also prohibited from associating with minors or using the Internet to contact minors.

However, Schmidt was not released on parole in accordance with the June 21, 2005, order. On June 23, 2005, the Parole Board placed a stay on Schmidt's release. Four days later, on June 27, 2005, the Parole Board held a "Special Agenda," "nonappearance" hearing. The Parole Board then issued an order dated June 27, 2005, which stated, "Review of [section] 1800 indicates that the [Parole] Board does not have parole authority/discretion over court commitment orders pursuant to [section] 1800. Therefore, the Board order and decision in this case of June 21, 2005 is vacated and nullified."

Schmidt challenged the Parole Board's June 27, 2005, order by filing a petition in the superior court for a writ of habeas corpus directing the Parole Board to reinstate its June 21, 2005, parole release order. Schmidt argued that the Parole Board had authority to parole a person committed under section 1800 under the statutory scheme for CYA commitment. Further, Schmidt asserted that the Parole Board's improper rescission of its decision to grant parole had been influenced by the district attorney's protests to government officials.

The superior court granted the habeas corpus petition in its order of January 26, 2006. As stated in the superior court's order, the court ruled that the Parole Board had the authority to grant parole pursuant to section 1802 because that section provides the CYA with control over all persons in the custody of the CYA under a section 1800 extended commitment, subject to the section 1766 provisions authorizing parole and discharge. Relying on this interpretation of section 1802, the superior court found that the Parole Board's "decision to revoke parole was not based upon evidence but upon the erroneous conclusion that it lacked authority to grant parole."

The superior court also noted in its order that the Parole Board's erroneous determination of its parole power would allow the CYA "to discharge someone, but would not authorize the more restrictive order for parole, an unlikely legislative intention." Accordingly, the trial court granted Schmidt's habeas corpus petition and directed the CYA to reinstate its June 21, 2005 parole release order.

## III. DISCUSSION

### A. *Appealability*

The People's appeal of the trial court's January 26, 2006, order granting Schmidt's habeas corpus petition and directing the Parole Board to reinstate its original parole release order is authorized under Penal Code section 1507, which provides, in pertinent part, that "[w]here an application for a writ of habeas corpus has been made by or on behalf of any person other than a defendant in a criminal case, an appeal may be taken to the court of appeal from a final order of a superior court granting all or any part of the relief sought . . . ." (Pen. Code, § 1507; see also *In re Carr* (1995) 38 Cal.App.4th 209, 211 [45 Cal.Rptr.2d 34].) While the appeal was pending, we granted the People's petition for a writ of supersedeas and stayed enforcement of the trial court's order until final determination of the appeal.

### B. *Standard of Review*

On appeal, the People contend that the trial court erred in its interpretation of sections 1800 through 1803, which comprise the statutory scheme for extended CYA commitment. They assert that section 1802 authorizes the CYA to either discharge a person committed under section 1800 or seek recommitment, but provides no parole authority. Schmidt disagrees. In his view, the trial court correctly determined that section 1802 authorizes release on parole because that section provides that the CYA has control of a person committed under section 1800 subject to other statutory provisions authorizing parole and discharge.

We begin our analysis with a determination of the appropriate standard of review where, as here, the issue to be decided involves statutory interpretation. On appeal, we review questions of law under the de novo standard of review. (*Amdahl Corp. v. County of Santa Clara* (2004) 116 Cal.App.4th 604, 611 [10 Cal.Rptr.3d 486].) "Matters of interpreting and applying a statute are questions of law. [Citations.]" (*Ibid.*) Thus, we independently construe statutory law and administrative rules and regulations. (*Ibid.*)

■ The scope of our independent review is governed by California Supreme Court authority. "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citations.]' " (*Id.* at p. 911.) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Ibid.*)

■ "If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.]" *(Estate of Griswold, supra,* 25 Cal.4th at p. 911.) "In such cases, we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" *(Ibid.)*

■ " 'Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.' " *(Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' " *(Ibid.)*

Having determined the applicable standard of review for trial court rulings that involve statutory interpretation, we turn to an overview of the statutory scheme for extended CYA commitment, section 1800 et seq.

C. *The Statutory Scheme for Extended Commitment, Section 1800 et seq.*

■ The Welfare and Institutions Code specifies the maximum time that a person may be detained by the CYA in section 1769 (a person committed by the juvenile court), section 1770 (a person committed after a misdemeanor conviction) and section 1771 (a person committed after a felony conviction).[9]

---

[9] Section 1769 provides, "(a) Every person committed to the Department of the Youth Authority by a juvenile court shall, except as provided in subdivision (b), be discharged upon the expiration of a two-year period of control or when the person reaches his or her 21st birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800). [¶] (b) Every person committed to the Department of the Youth Authority by a juvenile court who has been found to be a person described in Section 602 by reason of the violation of any of the offenses listed in subdivision (b), paragraph (2) of subdivision (d), or subdivision (e) of Section 707, shall be discharged upon the expiration of a two-year period of control or when the person reaches his or her 25th birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)."

Section 1770 provides, "Every person convicted of a misdemeanor and committed to the authority shall be discharged upon the expiration of a two-year period of control or when the person reaches his 23d birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)."

Section 1771 provides, "Every person convicted of a felony and committed to the authority shall be discharged when such person reaches his 25th birthday, unless an order for further

The CYA's maximum jurisdiction accordingly varies "dependent upon whether the offense was a misdemeanor or a felony and whether there [has] been a conviction" and discharge is generally mandatory when jurisdiction terminates. (*In re Valenzuela* (1969) 275 Cal.App.2d 483, 485, fn. 2 [79 Cal.Rptr. 760].) "In most instances an offender cannot be held in the Youth Authority beyond his [or her] 25th birthday." (*Chaparro v. Superior Court* (1990) 218 Cal.App.3d 560, 565 [267 Cal.Rptr. 181].)

Prior to 1963, detention of a youth beyond the age of 25 was not authorized, with one exception. Where CYA believed that the youth remained a danger to the public and the maximum term prescribed for his or her offense had not expired, former section 1780 authorized the CYA to petition the committing court for an order sending the youth to state prison or placing him or her on probation. (Former §§ 1771, 1780–1782;[10] *In re McInturff* (1951) 37 Cal.2d 876, 879 [236 P.2d 574].)

In 1963, the Legislature added a second statutory exception to the general rule of mandatory discharge no later than the age of 25. Sections 1800 through 1803 were added and sections 1769, 1770, and 1771 were amended at the request of the CYA to provide that an order for further detention could be made by the committing court pursuant to section 1800 et seq. (*In re Valenzuela, supra,* 275 Cal.App.2d at p. 485; *Youth Authority: Extended Time of Detention* (1963) 38 State Bar J. 820, 821.) By enacting sections 1800 through 1803, the Legislature intended to provide procedures whereby "a person in the custody of the Youth Authority who is otherwise required by age or passage of time to be discharged, but who is, by reason of mental or physical deficiency, disorder, or abnormality, a physical danger to the public, [can] be detained for [a] further period upon proper application by the Youth Authority and order of the court." (Legis. Counsel, Rep. on Sen. Bill No. 313 (1963 Reg. Sess.) p. 1.)

---

detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800) or unless a petition is filed under Article 5 of this chapter. In the event such a petition under Article 5 is filed, the authority shall retain control until the final disposition of the proceeding under Article 5."

[10] Prior to the 1963 amendment, section 1780 provided, "If the date of discharge occurs before the expiration of a period of control equal to the maximum term prescribed by law for the offense of which he was convicted, and if the Authority believes that unrestrained freedom for said person would be dangerous to the public, the Authority shall petition the court by which the commitment is made. [¶] The petition shall be accompanied by a written statement of the facts upon which the Authority bases its opinion that discharge from its control at the time stated would be dangerous to the public, but no such petition shall be dismissed merely because of its form or an asserted insufficiency of its allegations; every order shall be reviewed on its merits."

■ The statutory scheme set forth in section 1800 et seq. provides for the civil commitment of persons under the control of the CYA. (*In re Gary W.* (1971) 5 Cal.3d 296, 302 [96 Cal.Rptr. 1, 486 P.2d 1201].) "[T]he scheme involves neither a juvenile proceeding nor an extension of a prior juvenile court proceeding." (*In re Howard N., supra,* 35 Cal.4th at p. 126 (*Howard N.*).) Instead, a proceeding under section 1800 results in a modification of the dispositional order. (*In re Steven S.* (1999) 76 Cal.App.4th 349, 353 [90 Cal.Rptr.2d 290].)

Under the current version of section 1800, when the CYA determines that discharge of a person from the control of the department at the time mandated by other statutes "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior," the department must request the filing of a petition for continued commitment of the person. (§ 1800; see *Howard N., supra,* 35 Cal.4th at p. 126 [construing former § 1800].)[11] The petition must be filed at least 90 days before the time discharge would otherwise be required. (§ 1800.)

■ Where the trial court determines that the section 1800 petition on its face supports a finding of probable cause, the court is required to hold a probable cause hearing. (§ 1801.)[12] The trial court reviews the evidence and determines "whether there is probable cause to believe that discharge of the

---

[11] The issue of whether section 1800 is unconstitutional unless the statute is construed to require that the petition allege, and the trial court find, that there is a serious and well-founded risk that the petitioner would reoffend if not committed, is presently pending in the California Supreme Court. (*In re Lemanuel C.** (Cal.App.) review granted Aug. 23, 2006, S144515.)

[12] Section 1801 provides, "(a) If a petition is filed with the court for an order as provided in Section 1800 and, upon review, the court determines that the petition, on its face, supports a finding of probable cause, the court shall order that a hearing be held pursuant to subdivision (b). The court shall notify the person whose liberty is involved and, if the person is a minor, his or her parent or guardian (if that person can be reached, and, if not, the court shall appoint a person to act in the place of the parent or guardian) of the hearing, and shall afford the person an opportunity to appear at the hearing with the aid of counsel and the right to cross-examine experts or other witnesses upon whose information, opinion, or testimony the petition is based. The court shall inform the person named in the petition of his or her right of process to compel attendance of relevant witnesses and the production of relevant evidence. When the person is unable to provide his or her own counsel, the court shall appoint counsel to represent him or her. [¶] The probable cause hearing shall be held within 10 calendar days after the date the order is issued pursuant to this subdivision unless the person named in the petition waives this time. [¶] (b) At the probable cause hearing, the court shall receive evidence and determine whether there is probable cause to believe that discharge of the person would be physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior. If the court determines there is not probable cause, the court shall dismiss the petition and the person shall be discharged from the control of the authority at the time required by Section 1766, 1769, 1770, 1770.1, or 1771, as applicable. If the court determines

---

*Reporter's Note: For Supreme Court opinion see 41 Cal.4th 33.

person would be physically dangerous to the public because of his or her mental deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior." (§ 1801, subd. (b).) If the trial court decides that probable cause exists, the person is entitled to a jury trial. (§ 1801.5; *In re Gary W., supra*, 5 Cal.3d 296, 307.)

■ The jury or the trial court (if jury trial is waived) determines at trial whether, under the reasonable doubt standard of proof, the person is "physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior." (§§ 1801, subd. (b), 1801.5.) A person may be committed for up to two years if the trier of fact finds that the person satisfies the statutory criteria for dangerousness. (§ 1802; *Howard N., supra*, 35 Cal.4th at p. 126.) Section 1802 also provides that the person must be discharged from CYA control unless a new petition for extended commitment is filed and a new order for continued detention is made. Thus, under section 1802 a person may be recommitted for two-year periods indefinitely upon compliance with the statutory procedure set forth at section 1800 et seq. (*Howard N., supra*, at pp. 126–127.)

Having reviewed the statutory scheme for extended commitment, our next task is to determine whether a person committed under section 1800 may be released on parole.

D. *Release on Parole*

■ The statutory scheme for the extended commitment of a person in the custody of the CYA, section 1800 et seq., does not expressly provide that the CYA has the authority to release on parole a person committed under section 1800. The extent of the CYA's control over a person committed under section 1800 is generally prescribed by section 1802. Thus, as the trial court and the parties correctly determined, in order to decide whether the CYA has the authority to parole a person committed under section 1800 it is necessary to construe the provisions of section 1802.

Section 1802 provides in its entirety, "When an order for continued detention is made as provided in Section 1801, the control of the authority over the person shall continue, subject to the provisions of this chapter, but, unless the person is previously discharged as provided in Section 1766, the authority shall, within two years after the date of that order in the case of persons committed by the juvenile court, or within two years after the date of

---

there is probable cause, the court shall order that a trial be conducted to determine whether the person is physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality."

that order in the case of persons committed after conviction in criminal proceedings, file a new application for continued detention in accordance with the provisions of Section 1800 if continued detention is deemed necessary. These applications may be repeated at intervals as often as in the opinion of the authority may be necessary for the protection of the public, except that the department shall have the power, in order to protect other persons in the custody of the department to transfer the custody of any person over 21 years of age to the Director of Corrections for placement in the appropriate institution. [¶] Each person shall be discharged from the control of the authority at the termination of the period stated in this section unless the authority has filed a new application and the court has made a new order for continued detention as provided above in this section."

The People argue that section 1802 does not authorize parole because that section only authorizes discharge or recommitment of a person committed under section 1800. In the People's words, "[The CYA's] authority to grant early release to a section 1800 commitment is limited solely to those instances when it determines that a person may be discharged 'consistent with the protection of the public,'" based on the language of section 1802 providing the [CYA] with the authority to "discharge as provided in Section 1766."[13] The People further assert that the "only applicable provision under section 1766 regarding discharge is subdivision (a)(6), which provides that [the CYA] may '[d]ischarge him or her from its control when it is satisfied that discharge is consistent with the protection of the public.'"

---

[13] Section 1766 provides in pertinent part, "(a) When a person has been committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, the Board of Parole Hearings may, according to standardized review and appeal procedures established by the board in policy and regulation and subject to the powers and duties enumerated in subdivision (a) of Section 1719 do any of the following: [¶] (1) Permit the ward his or her liberty under supervision and upon conditions it believes are best designed for the protection of the public. [¶] (2) Order his or her confinement under conditions it believes best designed for the protection of the public pursuant to the purposes set forth in Section 1700, except that a person committed to the division pursuant to Sections 731 or 1731.5 may not be held in physical confinement for a total period of time in excess of the maximum periods of time set forth in Section 731. Nothing in this subdivision limits the power of the board to retain the minor or the young adult on parole status for the period permitted by Sections 1769, 1770, and 1771. [¶] (3) Order reconfinement or renewed release under supervision as often as conditions indicate to be desirable. [¶] (4) Revoke or modify any parole or disciplinary appeal order. [¶] (5) Modify an order of discharge if conditions indicate that such modification is desirable and when that modification is to the benefit of the person committed to the division. [¶] (6) Discharge him or her from its control when it is satisfied that discharge is consistent with the protection of the public."

Section 1719 provides in pertinent part, "(a) Commencing July 1, 2005, the following powers and duties shall be exercised and performed by the Board of Parole Hearings: discharges of commitment, orders to parole and conditions thereof, revocation or suspension of parole, and disciplinary appeals."

The People also maintain that the provisions of the Welfare and Institutions Code giving the CYA parole authority (§§ 1765, 1766) apply only to "wards serving a criminal sentence," consistent with the dictionary definition of "parole" as "a term applying to release from a sentence or commitment based on a crime, as opposed to a civil commitment for mental health care."

Schmidt disputes the People's interpretation of section 1802, arguing that the trial court's analysis was correct. The trial court determined that the Parole Board has the authority to grant parole because section 1802 expressly provides the CYA with control over all persons in the custody of the CYA under a section 1800 extended commitment, subject to the section 1766 provisions authorizing parole and discharge. Schmidt emphasizes the trial court's construction of the phrase "subject to the provisions of this chapter" in section 1802 as the key to a finding of parole authority, because "the provisions of this chapter" that apply to a person committed under section 1800 include the parole authority provided by section 1766.

Schmidt further contends that section 1802 cannot be logically construed to limit the CYA's authority to either discharging the person or seeking recommitment and thus, as the People argue, to implicitly preclude parole of a person committed under section 1800. Schmidt asserts that the language in section 1802 limiting the CYA's authority merely prohibits the CYA from seeking recommitment under section 1800 if the CYA has previously discharged the person.

Applying the rules of statutory interpretation, we conclude that the CYA does not have statutory authority to release on parole a person committed under section 1800. As we will further explain, it is apparent upon close examination of the provisions authorizing parole that the CYA does not have authority to parole a person after the date of mandatory discharge because the CYA's parole authority is coextensive with the length of maximum CYA jurisdiction.

■ Section 1766, subdivision (a)(2), expressly provides that the Parole Board may "retain the minor or the young adult on parole status for the period permitted by Sections 1769, 1770, and 1771." As we have discussed, sections 1769, 1770, and 1771 prescribe the length of maximum CYA jurisdiction and the corresponding date of mandatory discharge. Thus, the statutory scheme for parole of youthful offenders (§ 1766 et seq.) authorizes the Parole Board to retain a minor or young adult on parole during the period prior to the date of mandatory discharge prescribed by sections 1769, 1770, or 1771. For that reason, as our Supreme Court has stated, "the parolee must acknowledge that he [or she] is still under the control of the authority and that violations of parole conditions may result in . . . return to an authority

institution for the remainder of the commitment period." (*People v. Olivas* (1976) 17 Cal.3d 236, 245 [131 Cal.Rptr. 55, 551 P.2d 375].)

Thus, since the purpose of a section 1800 commitment is to extend the detention of a dangerous person beyond the date discharge would otherwise be mandatory under the applicable statute (either §§ 1769, 1770, or 1771), a person committed under section 1800 may not be released on parole because the CYA no longer has parole authority pursuant to section 1766, subdivision (a)(2).

In the present case, the record reflects that Schmidt reached the age of 25 in March 1997, and his commitment was extended for two years pursuant to section 1800[14] by a February 1997 trial court order. The Parole Board's authority to parole Schmidt therefore expired in March 1997 when he reached the age of mandatory discharge under sections 1769 through 1771. Accordingly, the trial court erred in ruling that the Parole Board had the authority to parole Schmidt pursuant to section 1802.

### E. *Conditional Release*

Our determination that the CYA is not authorized to parole a person committed under section 1800 does not end our inquiry. We asked the parties to submit supplemental briefing on the following issue: whether any provisions of the Welfare and Institutions Code, including but not limited to section 1766, subdivision (a)(1), authorize the conditional release of a person committed under section 1800.

In their supplemental briefing, the parties apply their arguments regarding parole authority to the question of whether conditional release is authorized for a person committed under section 1800. The People contend that conditional release is not authorized because section 1802 limits CYA's early release authority solely to discharge as provided in section 1766, subdivision (a)(6), which authorizes the CYA to discharge a person "from its control

---

[14] In 1997, former section 1800 provided, "Whenever the Youthful Offender Parole Board determines that the discharge of a person from the control of the Youth Authority at the time required by Section 1766, 1769, 1770, 1770.1, or 1771, as applicable, would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality, the board, through its chairman, shall request the prosecuting attorney to petition the committing court for an order directing that the person remain subject to the control of the authority beyond that time. The petition shall be filed at least 90 days before the time of discharge otherwise required. The petition shall be accompanied by a written statement of the facts upon which the board bases its opinion that discharge from control of the Youth Authority at the time stated would be physically dangerous to the public, but no such petition shall be dismissed nor shall an order be denied merely because of technical defects in the application. [¶] The prosecuting attorney shall promptly notify the Youthful Offender Parole Board of a decision not to file a petition."

when it is satisfied that discharge is consistent with the protection of the public." Schmidt again disagrees, arguing that statutory authorization for conditional release is provided by section 1766, subdivision (a)(1), which provides that the Parole Board may "[p]ermit the ward his or her liberty under supervision and upon conditions it believes are best designed for the protection of the public." Schmidt also asserts that conditional release or outpatient treatment is "a hallmark [of] virtually every confinement and commitment scheme," benefiting both the public and the individual by providing "a tool for successful reintegration into society . . . ."

■■■ Having carefully reviewed the statutory scheme for extended CYA commitment (§ 1800 et seq.), we conclude that the CYA has the authority to conditionally release a person committed under section 1800. Our analysis is founded on the following language of section 1802: "When an order for continued detention is made as provided in Section 1801, the control of the authority over the person shall continue, subject to the provisions of this chapter . . . ." Giving these words their "usual and ordinary meaning," as we are required to do (*Estate of Griswold, supra*, 25 Cal.4th at p. 911), we read section 1802 to provide that when a person's CYA commitment is extended under section 1800, the CYA's control over that person continues to the extent authorized by the other provisions of the chapter containing section 1802, which is chapter 1 of division 2.5 of the Welfare and Institutions Code.

The provisions of chapter 1 of division 2.5 of the Welfare and Institutions Code include section 1766, which, as Schmidt emphasizes, provides that the CYA has the authority to permit a person committed to the department "his or her liberty under supervision and upon conditions it believes are best designed for the protection of the public." (§ 1766, subd. (a)(1).) This language implicitly authorizes conditional release because it allows the CYA to release a person from custody under supervision and with conditions. Moreover, section 1766 has been construed to vest the CYA with "wide discretionary power in the treatment of a person committed to it." (*In re Herrera* (1943) 23 Cal.2d 206, 210 [143 P.2d 345], disapproved on other grounds in *People v. Olivas, supra*, 17 Cal.3d at p. 257.)

■■■ Accordingly, we find that section 1802 does provide that a person committed under section 1800, and who therefore is not eligible for parole, may be conditionally released under supervision as authorized by section 1766, subdivision (a)(1). We also find that the period of conditional release may not extend beyond the expiration of the section 1800 commitment period, because, pursuant to section 1802, the CYA is required to discharge a person when the section 1800 commitment period expires absent the filing of a petition for continued detention.

Our determination is consistent with the requirement that we consider statutory language in the context of the entire statute and the statutory scheme of which the statute is a part. (*Phelps v. Stostad, supra,* 16 Cal.4th at p. 32.) Following this rule of statutory interpretation, we reject the People's contention that section 1802 limits the CYA's control over a person committed under section 1800 to either discharge or recommitment. The People's argument depends upon a phrase from section 1802, "discharged as provided in Section 1766," which is included in the first sentence of section 1802: "When an order for continued detention is made as provided in Section 1801, the control of the authority over the person shall continue, subject to the provisions of this chapter, but, unless the person is previously discharged as provided in Section 1766, the authority shall . . . file a new application for continued detention . . . ."

The People interpret the phrase "discharged as provided in Section 1766" to provide that discharge is the exclusive means by which a person committed under section 1800 may be released. To the contrary, as we have discussed, section 1802 incorporates the provisions of section 1766 implicitly authorizing conditional release (§ 1766, subd. (a)(1)), since those provisions are included in chapter 1 of division 2.5 of the Welfare and Institutions Code. Section 1766 also authorizes the CYA to "[d]ischarge [a ward] from its control when it is satisfied that discharge is consistent with the protection of the public." (§ 1766, subd. (a)(6).) The provisions of section 1766 authorizing discharge thus apply to a person committed under section 1800. However, there is no language in either section 1766 or section 1802 that expressly restricts the CYA's options with respect to a person committed under section 1800 to either discharge or recommitment, or that precludes conditional release.

## F. *Other Statutory Schemes for Involuntary Commitment*

Our determination that a person committed under section 1800 may be conditionally released is in accord with other statutory schemes for involuntary commitment that provide for conditional release or some form of supervised control other than confinement. One example is the Sexually Violent Predators Act, section 6600 et seq., which provides for conditional release. A person committed as a sexually violent predator may be placed in the community under supervision and treatment if it is unlikely that the person will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder, pursuant either to proceedings initiated by the Department of Mental Health (§ 6607)[15] or upon petition by the committed

---

[15] Section 6607, subdivision (a), provides, "(a) If the Director of Mental Health determines that the person's diagnosed mental disorder has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the

person (§ 6608).[16] (*People v. Collins* (2003) 110 Cal.App.4th 340, 346–347 [1 Cal.Rptr.3d 641]; *People v. Cheek* (2001) 25 Cal.4th 894, 898 [108 Cal.Rptr.2d 181, 24 P.3d 1204].)

Other involuntary commitment schemes provide for outpatient treatment. The mentally disordered offender law (Pen. Code, § 2960 et seq.)[17] provides that a defendant with a severe mental disorder, who meets certain other statutory criteria (including posing a serious threat of physical harm to other people), may be involuntarily committed as a mentally disordered offender as a condition of parole or upon termination of parole and be required to submit to mental health treatment. (Pen. Code, §§ 2960, 2962, subd. (a), 2970, 2972.) Where the committing court determines that there is reasonable cause to believe that the person can be safely and effectively treated on an outpatient basis, the committed person may be released for outpatient treatment. (Pen. Code, §§ 2964, subd. (a), 2972, subd. (d).)[18]

---

community, the director shall forward a report and recommendation for conditional release in accordance with Section 6608 to the county attorney designated in subdivision (i) of Section 6601, the attorney of record for the person, and the committing court."

[16] Section 6608, subdivision (a) provides, "(a) Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release and subsequent unconditional discharge without the recommendation or concurrence of the Director of Mental Health. If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person's condition had not so changed that he or she would not be a danger to others in that it is not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted. Upon receipt of a first or subsequent petition from a committed person without the concurrence of the director, the court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing. The person petitioning for conditional release and unconditional discharge under this subdivision shall be entitled to assistance of counsel."

[17] Penal Code section 2960 provides, "The Legislature finds that there are prisoners who have a treatable, severe mental disorder that was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated. Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public. Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission."

[18] Penal Code section 2964, subdivision (a), provides in pertinent part, "(a) The treatment required by Section 2962 shall be inpatient unless the State Department of Mental Health certifies to the Board of Prison Terms that there is reasonable cause to believe the parolee can

Similarly, a defendant involuntarily committed as a narcotics addict pursuant to Welfare and Institutions Code section 3050[19] may be released on outpatient status where the Parole Board determines that the defendant has recovered from narcotics addiction or imminent danger of addiction. (*Id.*, § 3151.)[20] Pursuant to Penal Code section 1600, placement on outpatient status is also possible for a person committed to a state hospital or other treatment facility pursuant to Penal Code section 1026 (not guilty by reason of insanity), or Penal Code section 1367 (mentally incompetent to stand trial). Thus, in several other involuntary commitment schemes, the Legislature has expressly provided for a form of supervised release during the commitment period and the procedure by which the committed person may be released.

### G. *Conclusion*

We recognize that the statutory scheme for extended commitment, section 1800 et seq., does not include detailed procedures for conditional release. For example, there are no provisions for initiation of conditional release proceedings, notice, a hearing, appointment of counsel, or supervision of a person

---

be safely and effectively treated on an outpatient basis, in which case the Board of Prison Terms shall permit the State Department of Mental Health to place the parolee in an outpatient treatment program specified by the State Department of Mental Health."

Penal Code section 2972, subdivision (d), provides, "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis. Except as provided in this subdivision, the provisions of Title 15 (commencing with Section 1600) of Part 2, shall apply to persons placed on outpatient status pursuant to this paragraph. The standard for revocation under Section 1609 shall be that the person cannot be safely and effectively treated on an outpatient basis."

[19] Section 3050 provides in pertinent part, "Upon conviction of a defendant of a misdemeanor or infraction or following revocation of probation previously granted for a misdemeanor or infraction, whether or not sentence has been imposed, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics, such judge shall adjourn the proceedings or suspend the imposition or execution of the sentence, certify the defendant to the superior court and order the district attorney to file a petition for a commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility."

[20] Section 3151 provides in pertinent part, "Commencing July 1, 2005, after an initial period of observation and treatment, and subject to the rules and policies established by the secretary, whenever a person committed under Article 2 or Article 3 of this chapter has recovered from his addiction or imminent danger of addiction to such an extent that, in the opinion of the secretary, release in an outpatient status is warranted, the secretary shall certify that fact to the board. If the secretary has not so certified within the preceding 12 months, in the anniversary month of the commitment of any person committed under this chapter his case shall automatically be referred to the board for consideration of the advisability of release in outpatient status. Upon certification by the secretary or upon automatic certification, the board may release the person in an outpatient status subject to all rules and regulations adopted by the board, and subject to all conditions imposed by the board, whether of general applicability or restricted to the particular person released in outpatient status, and subject to being retaken and returned to inpatient status as prescribed in those rules, regulations, or conditions."

conditionally released into the community. We respectfully invite the Legislature to review the statutory scheme for extended commitment, to provide statutory direction regarding the appropriate procedures for conditional release of persons committed under section 1800 in accordance with the requirements of due process, and to specify that the period of conditional release may not extend beyond the expiration of the section 1800 commitment period.

We emphasize that our determination that the CYA has authority to conditionally release a person committed under section 1800 is consistent with the legislative purpose of the juvenile law, as expressed in section 202: "The purpose of the juvenile delinquency laws is twofold: (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public . . . .' " (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614–615 [9 Cal.Rptr.3d 503] [noting also that § 202, subd. (b), authorizes punishment consistent with rehabilitative objectives]; see § 202, subds. (a), (b), (d).)[21]

We believe that conditional release serves the purpose of rehabilitation by facilitating the transition of a committed person from confinement in a CYA facility to life as a productive member of the community. At the same time, conditional release serves the purpose of public safety, because conditional release requires supervision and compliance with certain conditions, and the CYA retains the authority to return a person to confinement where conditional release is unsuccessful. Additionally, information regarding the committed person's performance on conditional release is relevant to the determination of whether confinement is no longer necessary because the committed person does not continue to be a danger to the public.

In the present case, we will reverse the trial court's order granting Schmidt's habeas corpus petition and remand the matter to the trial court with instructions to vacate its order reinstating the June 21, 2005, parole release order and to issue a new order remanding the matter to the Parole Board for further proceedings in accordance with due process and the views expressed in this opinion. We express no opinion with regard to the merits or outcome of any future proceedings.

---

[21] The provisions of section 202 apply to a person who, like Schmidt, was declared a ward of the juvenile court while a minor, pursuant to section 602, and who became an adult while under the jurisdiction of the juvenile court. (*In re Charles G., supra,* 115 Cal.App.4th at p. 614.)

## IV. DISPOSITION

The order of January 26, 2006, granting respondent Schmidt's petition for a writ of habeas corpus is reversed and the matter is remanded to the trial court with instructions to vacate its order reinstating the June 21, 2005, parole release order and to issue a new order remanding the matter to the Parole Board (now the Board of Parole Hearings) for further proceedings in accordance with due process and the views expressed in this opinion. The stay issued February 22, 2006, is vacated.

Mihara, J., and Duffy, J., concurred.

A petition for a rehearing was denied October 27, 2006, and on October 3, 2006, the opinion was modified to read as printed above. The petition of respondent Donald Schmidt for review by the Supreme Court was denied December 20, 2006, S147903.